IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DONNA ANNICELLI | Criminal Number 08-030ML |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States Sentencing Guidelines (the "Guidelines") advises a sentence in the range of ten to sixteen months. Because Defendant's range falls within Zone C of the Sentencing Table, a split sentence is available under the Guidelines. The Government recommends

- a ten month split-sentence, consisting of five months spent in prison and five months spent in home confinement;
- supervised release following the sentence for a term of not more than three years;
- restitution to SSA in the amount of $86,705.75, which is the actual loss to SSA, as well as interest as permitted under 18 U.S.C. § 3612(f); and
- a mandatory special assessment of $100 per 18 U.S.C. § 3013 and no additional fine in light of Defendant's financial circumstances.

Defendant requests a variance from the Guidelines: no incarceration, no home confinement, and instead probation. The Guidelines advise that mere probation is insufficient. In light of the amount stolen from SSA, the seven year period of time over which Defendant conducted her theft, and the regularity with which she stole funds from SSA over these seven years, mere probation is insufficient.

## I. GUIDELINE CALCULATION AND PLEA AGREEMENT.

On April 22, 2008, Defendant entered into a Plea Agreement and subsequently pleaded guilty to a one-count Information that charged theft of funds belonging to SSA in violation of 18 U.S.C. § 641. Some of the facts of the offense are admitted in Defendant's Acceptance of Responsibility, which is attached to the PSR. The facts of the offense were admitted in the Plea Agreement at paragraph 4(a) through (o) and at Exhibit B (which is attached herein as Exhibit 1)

to the Plea Agreement. The facts of the offense were also stated at the plea hearing and are fairly and accurately stated in the PSR.

The Office of the Probation Officer correctly computed the advisory sentencing range in the PSR. Defendant's total offense level is twelve, taking into account a two point reduction for acceptance of responsibility. Defendant has no prior criminal convictions and therefore has 0 criminal history points and a criminal history category of I. The applicable Guideline range is six to ten months. The PSR also accurately reports an absence of factors warranting departure from the Guideline sentence.

Under the terms of the Plea Agreement, as long as Defendant did not advocate for a sentence below the Guideline range, the Government agreed to recommend a term of imprisonment at the lowest point of the range. *See* Plea Agreement at 2(a). Although Defendant has advocated for a sentence below the range, the Government nonetheless recommends a sentence at the low end of the range. The Government also did not agree to recommend a split sentence, *see* Plea Agreement at 2(a), but nonetheless recommends a split sentence.

II. ARGUMENT

A split sentence at the lowest point of the Guideline range best accounts for the nature and circumstances of Defendant's offense, the seriousness of Defendant's offense, the need for deterrence, and the other factors set forth under 18 U.S.C. § 3553. Such a split sentence also reasonably and adequately accounts for Defendant's personal circumstances as set forth in her Sentencing Memorandum.

Over the course of 309 transactions spread over seven years, Defendant managed to steal a total of $86,705.75 from the Social Security Administration ("SSA"). The intended loss was $88,643; SSA was able to recover some of the funds from Sovereign Bank. SSA deposited social security funds intended for Defendant's mother in a bank account, and these deposits continued after the death of Defendant's mother. Defendant did not inform SSA that her mother had died. Instead, Defendant repeatedly withdrew money from the account for her own use. In nineteen of the 309 transactions, Defendant forged her mother's signature on checks to withdraw

funds from the account. In the remaining 290 transactions, Defendant used automated teller machines to withdraw funds from the account. A chart of Defendant's check and ATM withdrawals is attached as Exhibit 1.[1] Defendant knew all the while that the funds did not belong to her. *See* PSR, Plea Agreement ¶4, and Defendant's Acceptance of Responsibility. Further details of Defendant's thefts are set forth below:

- from June 2000 (the month after Defendant's mother died) to December 2000, Defendant made or had others make 10 withdrawals, all via ATM, *and* Defendant stole funds or had funds stolen in four of the seven months during this period;
- in 2001, Defendant made or had others make 28 withdrawals – 19 via forged checks and 9 via ATM, *and* in seven of the twelve months during this period, Defendant stole funds or had funds stolen;
- in 2002, Defendant made or had others make 77 withdrawals, all via ATM, *and* not a month went by without a theft;
- in 2003, Defendant made or had others make 59 withdrawals, all via ATM, *and* only one month passed without a theft;
- in 2004, Defendant made or had others make 36 withdrawals, all via ATM, *and* not a month went by without a theft;
- in 2005, Defendant made or had others make 44 withdrawals, all via ATM, *and* not a month went by without a theft;
- in 2006, Defendant made or had others make 43 withdrawals, all via ATM, *and* not a month went by without a theft; and
- from January 2007 to June 2007 when SSA discovered the thefts, Defendant made or had others make 12 withdrawals, *and* Defendant stole funds or had funds stolen in five of the six months during this period.

*See* Ex. 1.

A. Nature and Circumstances of Defendant's Offense

Based on the pattern of the 309 withdrawals over the seven years, it is plain that the account was being used as a regular source of income. This inference is also supported by the pattern of low balances maintained on the account month-to-month. SSA deposited funds in the account on a monthly basis, and Defendant's withdrawal activities kept the account balance

[1] The information in this chart was admitted as part of the Plea Agreement. The Plea Agreement references the chart and incorporates the chart, and the chart is attached to the Plea Agreement as Exhibit B.

low throughout the seven year period. *See* Ex. 1. The overall theft is not the result of one isolated incident or even a few moments of weakness of will.

Defendant suggests that family illnesses, her own poor health, the desire to serve as the family "caretaker," and other financial stressors motivated her theft. It is noteworthy that the PSR reports that Defendant's income for 2007, 2006, and 2005 – all years during which Defendant was stealing from SSA – was, respectively, $61,779, $74,372, and $76,317. Defendant has not suggested and the PSR does not indicate that Defendant sought alternatives to alleviate her need, such as a second job or federal, state, or private assistance.

B. <u>History and Characteristics of Defendant</u>

Defendant's theft of $88,643 from SSA is her first offense of record. As set forth in greater detail in Exhibit 1 and above, this offense consisted of 309 separate, discrete thefts spread over seven years. Included in these 309 instances of theft are 19 instances of check fraud where Defendant forged the signature of her deceased mother.

C. <u>Seriousness of Offense</u>

The seriousness of Defendant's misconduct is demonstrated by the period of time over which she engaged in her theft and the overall amount she stole. Defendant's overall theft is the culmination of seven years of theft. She stole a sum total of $88,643, the intended loss. The actual loss was $86,705.75. To date, Defendant has not returned or offered to return any of outstanding $86,705.75.

In determining the seriousness of Defendant's crime, the identity of the victim is also relevant. Stealing from the SSA threatens the viability and availability of social security for all contributors.

D. <u>Adequacy of Deterrence</u>

Just as this Defendant had the opportunity to steal from SSA, others too will likely have similar opportunities. By punishing this Defendant, those others can be deterred. A sentence below the Guideline range, especially a sentence involving nothing more than

probation, does not provide adequate deterrence because it does not create an adequate disincentive.

E. Protecting Public from Further Crimes of Defendant

Defendant has been engaging in theft for seven years. Any guilt she may have felt early on was not enough to make her stop. She stopped stealing only after she was confronted by law enforcement officers, following SSA's discovery of her theft. A mere threat of possible incarceration was no enough to keep Defendant from violating the law. A sentence at the low end of the Guideline will make real what was a mere possibility and will thereby keep Defendant from committing other crimes in the future.

F. Educational or Vocational Training and Medical Care or Correctional Treatment

Incarceration may afford Defendant an opportunity for further vocational training, which may enable her to get positions that pay more than the positions she has previously held. Furthermore, the Bureau of Prisons has the capacity to tend to any physical or psychological conditions or ailments Defendant may have.

## III. CONCLUSION

For the aforementioned reasons, the above-recommended punishment is both reasonable and appropriate.

Respectfully submitted,
UNITED STATES OF AMERICA
By its Attorneys,
Robert Clark Corrente
UNITED STATES ATTORNEY
/s/ Milind M. Shah

Milind M. Shah
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, R.I. 02903
Office (401) 709-5000
Facsimile (401) 709-5001
milind.shah@usdoj.gov

CERTIFICATE OF SERVICE

On this 7th day of July 2007, I caused the within Opposition and Sentencing Memorandum to be filed electronically, and it is available for viewing and downloading from the ECF system. Electronic notification :

Judith Crowell, Esquire
128 Dorrance Street
Fourth Floor
Providence, RI 02903

/s/ Milind M. Shah
Milind M. Shah